William Jerome BRADSHAW,
Plaintiff–Appellant,

v.

Chalmers B. DANIEL, Jr., M.D.,
Defendant–Appellee.

Supreme Court of Tennessee.

April 5, 1993.

Rehearing Denied June 1, 1993.

R. Sadler Bailey, Memphis, for plaintiff-appellant.

Larry E. Killebrew, Charles G. Walker, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for defendant-appellee.

## OPINION

ANDERSON, Justice.

We granted this appeal to determine whether a physician has a legal duty to warn a non-patient of the risk of exposure to the source of his patient's non-contagious disease—Rocky Mountain Spotted Fever. The trial court denied the defendant physician's motion for summary judgment, but granted an interlocutory appeal on the issue of the physician's legal duty. The Court of Appeals limited the record and held that the facts were insufficient to show that the risk to the non-patient of contracting Rocky Mountain Spotted Fever was such that a legal duty arose on the part of the physician. We disagree and conclude, for the reasons stated herein, that the physician had a legal duty to warn the non-patient of the risk of exposure to the source of the patient's non-contagious disease.

## BACKGROUND

On July 19, 1986, Elmer Johns went to the emergency room at Methodist Hospital

South in Memphis, Tennessee, complaining of headaches, muscle aches, fever, and chills. He was admitted to the hospital under the care and treatment of the defendant, Dr. Chalmers B. Daniel, Jr. Dr. Daniel first saw Johns on July 22, 1986, at which time he ordered the drug Chloramphenicol, which is the drug of choice for a person in the latter stages of Rocky Mountain Spotted Fever. Johns' condition rapidly deteriorated, and he died the next day, July 23, 1986. An autopsy was performed, and the Center for Disease Control in Atlanta conclusively confirmed, in late September 1986, that the cause of death was Rocky Mountain Spotted fever. Although Dr. Daniel communicated with Elmer Johns' wife, Genevieve, during Johns' treatment, he never advised her of the risks of exposure to Rocky Mountain Spotted Fever, or that the disease could have been the cause of Johns' death.

A week after her husband's death, on August 1, 1986, Genevieve Johns came to the emergency room of Baptist Memorial Hospital in Memphis, Tennessee, with similar symptoms of chills, fever, mental disorientation, nausea, lung congestion, myalgia, and swelling of the hands. She was admitted to the hospital and treated for Rocky Mountain Spotted Fever, but she died three days later, on August 4, 1986, of that disease. It is undisputed that no patient-physician relationship existed between Genevieve Johns and Dr. Daniel.

The plaintiff, William Jerome Bradshaw, is Genevieve Johns' son. He filed this suit alleging that the defendant's negligence in failing to advise Genevieve Johns that her husband died of Rocky Mountain Spotted Fever, and in failing to warn her of the risk of exposure, proximately caused her death. The defendant filed a motion to dismiss for failure to state a cause of action on the grounds that the physician owed Genevieve Johns no legal duty because of the absence of a patient-physician relationship. The trial judge denied the motion.

Later, the defendant filed a motion for summary judgment on the same grounds, supported by the affidavit of Dr. Michael S. Gelfand. Dr. Gelfand testified that the medical standard of care did not require a physician treating a patient infected with, or suspected of being infected with, Rocky Mountain Spotted Fever to treat the family of the patient in contact with him, or to warn them of the risk of exposure to the disease or the risk of exposure to ticks or tick bites. The plaintiff responded with the affidavit of Dr. Burt Prater. Dr. Prater testified that because of the clustering effect of the disease, the medical standard of care required that a physician treating a patient with symptoms of Rocky Mountain Spotted Fever advise the family of the patient as to the incubation period, the symptoms of the disease, and the need for immediate medical attention upon manifestation of the symptoms. Dr. Prater further testified that the defendant, Dr. Daniel, negligently failed to diagnose Elmer Johns' fatal disease of Rocky Mountain Spotted Fever and failed to warn his wife, Genevieve Johns, of the incubation period of the disease, the symptoms, and the need to seek medical treatment upon manifestation of the symptoms. He also testified that the disease, if untreated, has a 40 percent mortality rate, but if treated promptly, has a 4 percent mortality rate. Based on the affidavits, the defendant's motion for summary judgment was denied.

The case was then transferred to another judge and tried before a jury, which returned a verdict of $50,000 against the defendant. Thereafter, the plaintiff filed a motion for a new trial or additur on the grounds of inadequate damages, and the defendant filed a motion notwithstanding the verdict on the grounds, among others, that no legal duty existed. The plaintiff's motion for a new trial was granted, and the defendant's motion was overruled.

After the new trial was granted, the defendant again filed a motion for summary judgment contending that he owed no legal duty to his patient's wife, Genevieve Johns. In support of the motion, the defendant relied upon the pleadings, the affidavit of Dr. Michael Gelfand, and the "entire record in this cause." The plaintiff filed no written response but, during oral argument on the motion, stated that he relied on the entire record in the original

trial. The trial judge again denied the motion; however, he granted the defendant an interlocutory appeal.

The Court of Appeals also granted the defendant's application for interlocutory appeal. *See* Tenn.R.App.P. 9. The plaintiff filed a designation of the record on appeal, listing, among other things, the defendant's testimony at the first trial, which had not been transcribed at the time of the hearing on the motion for summary judgment. The defendant moved to strike portions of the plaintiff's designation of the record on appeal, including the trial testimony of the defendant. The trial judge ordered that the defendant's trial testimony be included in the record on appeal.

The Court of Appeals refused to consider the defendant's trial testimony in its determination of the substantive issue of legal duty. The intermediate court then granted the motion for summary judgment, concluding that the record did not contain sufficient facts to establish a risk to Genevieve Johns which would give rise to a legal duty. We granted the plaintiff's application for permission to appeal and now reverse for the reasons set out herein.

## RECORD ON APPEAL

In this case, the trial judge ruled that the defendant's testimony at the first trial was properly includable in the record on appeal. The defendant, Dr. Daniel, testified at trial that he did not see his patient, Elmer Johns, for the first three days he was hospitalized, but communicated with another physician about him. On the fourth day of his hospitalization, Dr. Daniel examined him, recognized that Rocky Mountain Spotted Fever could be one of the causes of his symptoms, and prescribed a strong drug with significant side effects—which was the drug of choice for Rocky Mountain Spotted Fever victims. He also testified that although he was in communication with Genevieve Johns, he did not warn her that Rocky Mountain Spotted Fever could be causing her husband's symptoms, nor did he advise her of the incubation period, the need to be on the lookout for similar symptoms, and the need to seek immediate

treatment if such symptoms occurred. Dr. Daniel conceded that there is a medical, but not a legal, duty to educate the family and provide information when a patient is diagnosed as having Rocky Mountain Spotted Fever. The Court of Appeals refused to consider this testimony, opining that since it was not transcribed at the time of the hearing on the motion, it was not before the trial judge when he ruled on the motion.

The general policy of the Tennessee Rules of Appellate Procedure is to "disregard technicality in form in order that a just, speedy, and inexpensive determination of every appellate proceeding on its merits may be obtained." Tenn.R.App.P. 1 advisory commission comments.

■ The content of the record on appeal is governed by Tenn.R.App.P. 24, which is designed to ensure that the record on appeal conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." The procedure for correction or modification of the record is set forth in subsection (e) of Rule 24 which provides:

> If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

The procedure for correction or modification of the record reflects the policy of avoiding technicality and expediting a just resolution on the merits by according deference to the trial court's decision on which matters are properly includable in the record, thereby avoiding additional litigation on that subject alone. The specific purpose of Rule 24 is accommodated as well, since

the trial judge is in the best position to determine which matters are necessary to "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See also Artrip v. Crilley,* 688 S.W.2d 451, 453 (Tenn.App.1985). While Rule 24(e) grants an appellate court authority to direct that a supplemental record be certified and transmitted, absent extraordinary circumstances, an appellate court does not have the authority to refuse to consider matters that are determined by the trial court judge to be appropriately includable in the record.

■ Here, the first trial had been held and a new trial had been granted to the plaintiff. The defendant had filed a second motion for summary judgment on essentially the same grounds as his earlier motions to dismiss, for summary judgment, and notwithstanding the verdict. He relied on the Gelfand affidavit and the entire record in the cause, which included all his earlier motions and affidavits filed before and during the first trial, including the affidavit of the defendant. The plaintiff, in response, also relied on the entire record. The trial judge who ruled on the motion for summary judgment presided over the trial and heard the live testimony of the defendant. By allowing the testimony to be included in the record on appeal, the trial judge agreed that he considered the testimony when he denied the motion for summary judgment. Based on these facts, there were no "extraordinary circumstances" which would justify disregarding the defendant's testimony.

■ The defendant argues that the Court of Appeals' refusal to consider the testimony should be upheld because the plaintiff did not file a written response to the motion stating that he was relying on the first trial testimony. While we agree with the defendant that it would have been better practice for the plaintiff to have filed a written response, rather than stating it orally, this technical defect does not justify disregarding a portion of the record

that the trial judge deemed necessary to reflect a fair, accurate and complete account of what transpired in the trial court. *See* Tenn.R.App.P. 1 advisory commission comments; Tenn.R.App.P. 24.

Accordingly, in determining whether the defendant owed Genevieve Johns a legal duty, we will consider the entire record on appeal.

## LEGAL DUTY

The defendant physician argues that he owed his patient's wife no legal duty because first, there was no physician-patient relationship, and second, Rocky Mountain Spotted Fever is not a contagious disease and, therefore, there is no duty to warn of the risk of exposure.

■ We begin our analysis by examining how we determine when a legal duty may be imposed upon one for the benefit of another. While duty was not part of the early English common law jurisprudence of tort liability,[1] it has since become an essential element in negligence cases. No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *See McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn.1991); *Lindsey v. Miami Development Corp.,* 689 S.W.2d 856, 858 (Tenn.1985). The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court. Prosser § 37 at 236; *Glenn v. Conner,* 533 S.W.2d 297, 302 (Tenn. 1976); *Dooley v. Everett,* 805 S.W.2d 380, 384 (Tenn.App.1990). In determining the issue, a court should consider

> ... whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others—or, more simply, whether the interest of the plaintiff which has suffered

1. Winfield, *Duty in Tortious Negligence,* 34 Col. L.Rev. 41, 65 (1934). W. Keeton, *Prosser and*

*Keeton on the Law of Torts* § 53 at 356 (5th ed. 1984) ("Prosser").

invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court.... A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant. A decision that if certain facts are found to be true, a duty exists, leaves open the other questions now under consideration [concerning the existence of negligence].

*Lindsey,* 689 S.W.2d at 859, quoting Prosser, § 37 at 236. Thus, the imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct. Prosser, *Palsgraf Revisited,* 52 Mich.L.Rev. 1, 15 (1953); *Kirk v. Reese Hospital & Medical Ctr.,* 117 Ill.2d 507, 111 Ill.Dec. 944, 953–54, 513 N.E.2d 387, 396–97 (1987). Indeed, it has been stated that " 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." Prosser, § 53 at 358. Our determination of this question of law is *de novo* upon the record, viewing the evidence in a light most favorable to the plaintiff, the non-moving party, allowing all reasonable inferences and discarding all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991).

 The defendant contends that the absence of a physician-patient relationship negates the existence of a duty in this case. While it is true that a physician-patient relationship is necessary to the maintenance of a medical malpractice action,[2] it is not necessary for the maintenance of an action based on negligence, and this Court has specifically recognized that a physician may owe a duty to a non-

patient third party for injuries caused by the physician's negligence, if the injuries suffered and the manner in which they occurred were reasonably foreseeable. *Wharton Transport Corp. v. Bridges,* 606 S.W.2d 521, 526 (Tenn.1980) (physician owed duty to third party injured by disabled truck driver's negligence, where the physician was negligent both in his physical examination and certification of the truck driver for the employer).

Here, we are asked to determine whether a physician has an affirmative duty to warn a patient's family member about the symptoms and risks of exposure to Rocky Mountain Spotted Fever, a non-contagious disease. Insofar as we are able to determine, there is no reported decision from this or any other jurisdiction involving circumstances exactly similar to those presented in this case.

 We begin by observing that all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others. *See Doe v. Linder,* 845 S.W.2d 173, 178 (Tenn.1992); Restatement (Second) of Torts § 314 (1964).

In determining the existence of a duty, courts have distinguished between action and inaction. Professor Prosser has commented that "the reason for the distinction may be said to lie in the fact that by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs." Prosser, § 56 at 373; *Lindsey, supra,* 689 S.W.2d at 859.

Because of this reluctance to countenance nonfeasance as a basis of liability, as a general rule, under the common law, one person owed no affirmative duty to warn those endangered by the conduct of another. Prosser, § 56 at 374; *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 23, 551 P.2d 334, 343 (1976).

---

**2.** *See, e.g., Bass v. Barksdale,* 671 S.W.2d 476, 486 (Tenn.App.1984); *Dunbar v. Strimas,* 632 S.W.2d 558, 562 (Tenn.App.1981); *Osborne v.*

*Frazor,* 58 Tenn.App. 15, 425 S.W.2d 768, 771 (1968).

To mitigate the harshness of this rule, courts have carved out exceptions for cases in which the defendant stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger. *Lindsey*, 689 S.W.2d at 859; *Tarasoff*, 551 P.2d at 343; Restatement (Second) of Torts § 315 (1964). Accordingly,

> while an actor is always bound to prevent his acts from creating an unreasonable risk to others, he is under the affirmative duty to act to prevent another from sustaining harm only when certain socially recognized relations exist which constitute the basis for such legal duty.

Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 887 (1934).

One of the most widely known cases applying that principle is *Tarasoff, supra,* in which the California Supreme Court held that when a psychotherapist determines or, pursuant to the standards of his profession, should determine that his patient presents a serious danger of violence to another, the therapist has an affirmative duty to use reasonable care to protect the intended victim against such danger, and the duty may require the physician to warn the intended victim of the danger. 551 P.2d at 340. The special relationship of the patient to his psychotherapist supported imposition of the affirmative duty to act for the benefit of third persons. 551 P.2d at 343–44; *see generally* Williams, Annotation, *Liability of One Treating Mentally Afflicted Patient for Failure to Warn or Protect Third Persons Threatened by Patient*, 83 A.L.R.3d 1201 (1978 & Supp.1992).

Decisions of other jurisdictions have employed the same analysis and held that the relationship of a physician to his patient is sufficient to support the duty to exercise reasonable care to protect third persons against foreseeable risks emanating from a patient's physical illness. Specifically, other courts have recognized that physicians may be liable to persons infected by a patient, if the physician negligently fails to diagnose a contagious disease, or having diagnosed the illness, fails to warn family members or others who are foreseeably at risk of exposure to the disease. *See Gammill v. United States*, 727 F.2d 950, 954 (10th Cir.1984) (physician may be found liable for failing to warn a patient's family, treating attendants, or other persons likely to be exposed to the patient of the nature of the disease and the danger of exposure); *Davis v. Rodman*, 147 Ark. 385, 227 S.W. 612, 614 (1921) (physician has a duty to exercise reasonable care to prevent the spread of infectious diseases); *Jones v. Stanko*, 118 Ohio St. 147, 160 N.E. 456, 458 (1928) (physician liable for injuries incurred by third person who contracted smallpox as result of physician's failure to warn); *Skillings v. Allen*, 143 Minn. 323, 173 N.W. 663 (1919) (physician has a duty to use due care in advising a patient's parents about the possible transmission of infection); *Edwards v. Lamb*, 69 N.H. 599, 45 A. 480, 484 (1899) (physician held liable for failing to warn a patient's wife of the possibility of infection); *Hofmann v. Blackmon*, 241 So.2d 752, 753 (Fla.Dist.Ct.App.1970) *cert. denied* 245 So.2d 257 (Fla.1971) (physician has a duty to use reasonable care to advise a patient's family members of the existence and dangers of a disease); *Shepard v. Redford Community Hosp.*, 151 Mich.App. 242, 390 N.W.2d 239, 241 (1986) *appeal denied* 431 Mich. 872, 430 N.W.2d 458 (1988) (physician has a duty to warn a patient's family members of the possibility of infection); *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500, 503 (1979) (physician has a duty to warn third persons against possible exposure to contagious or infectious diseases); *Wojcik v. Aluminum Co. of America*, 18 Misc.2d 740, 183 N.Y.S.2d 351, 358 (1959) (physician has a duty to advise patient's wife of the risks of contracting a contagious disease); *see generally* Bateman, Annotation, *Liability of Doctor or Other Health Practitioner to Third Party Contracting Contagious Disease from Doctor's Patient*, 3 A.L.R.5th 370 (1992); 61 Am.Jur.2d *Physicians and Surgeons* § 245 (1981); 70 C.J.S. *Physicians and Surgeons* § 88 (1987).

For example, in *Hofmann, supra,* an action was brought against a physician by a child who had contracted tuberculosis as

a result of the physician's negligent failure to diagnose the disease in his patient, the child's father. Reversing a summary judgment for the physician, the Florida District Court of Appeals held

> that a physician owes a duty to a minor child who is a member of the immediate family and living with a patient suffering from a contagious disease to inform those charged with the minor's well being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease and that the duty is not negated by the physician negligently failing to become aware of the presence of such a contagious disease.

241 So.2d at 753.

Likewise, in *Shepard, supra,* a wrongful death action was filed by the mother of a child who was infected and died of spinal meningitis after the physician failed to diagnose the disease in his patient, the mother. Again, reversing a summary judgment in favor of the defendant on the issue of legal duty, the Michigan Court of Appeals stated that the

> defendant had a physician-patient relationship with plaintiff. This was a special relationship with the one who allegedly infected Eric, leading to his death.... Because defendant had a special relationship with plaintiff we conclude that defendant owed a duty of reasonable care to Eric. As plaintiff's son and a member of her household, Eric was a foreseeable potential victim of defendant's conduct.

390 N.W.2d at 241.

Finally in *Wojcik, supra,* an action was brought by a woman who was infected with tuberculosis against the physician who discovered her husband had the disease, but did not inform her. The New York court held that the physician owed a duty to warn his patient's wife of the risks associated with contracting the disease and stated that

> one who by reason of his professional relations is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or

danger is liable in damages to those injured by reason of his failure to do so. 183 N.Y.S.2d at 358 (citations omitted).

■■ Returning to the facts of this case, first, it is undisputed that there was a physician-patient relationship between Dr. Daniel and Elmer Johns. Second, here, as in the contagious disease context, it is also undisputed that Elmer Johns' wife, who was residing with him, was at risk of contracting the disease. This is so even though the disease is not contagious in the narrow sense that it can be transmitted from one person to another. Both Dr. Daniel and Dr. Prater, the plaintiff's expert, testified that family members of patients suffering from Rocky Mountain Spotted Fever are at risk of contracting the disease due to a phenomenon called clustering, which is related to the activity of infected ticks who transmit the disease to humans. Dr. Prater also testified that Dr. Daniel negligently failed to diagnose the disease and negligently failed to warn his patient's wife, Genevieve Johns, of her risk of exposure to the source of disease. Dr. Daniel's expert disputed these conclusions, but Dr. Daniel conceded there is a medical duty to inform the family when there is a diagnosis of the disease. Thus, this case is analogous to the *Tarasoff* line of cases adopting a duty to warn of danger and the contagious disease cases adopting a comparable duty to warn. Here, as in those cases, there was a foreseeable risk of harm to an identifiable third party, and the reasons supporting the recognition of the duty to warn are equally compelling here.

■■ We, therefore, conclude that the existence of the physician-patient relationship is sufficient to impose upon a physician an affirmative duty to warn identifiable third persons in the patient's immediate family against foreseeable risks emanating from a patient's illness. Accordingly, we hold that under the factual circumstances of this case, viewing the evidence in a light most favorable to the plaintiff, the defendant physician had a duty to warn his patient's wife of the risk to her of contracting Rocky Mountain Spotted Fever, when he knew, or in the exercise of reason-

able care, should have known, that his patient was suffering from the disease. Our holding here is necessarily limited to the conclusion that the defendant physician owed Genevieve Johns a legal duty. We express no opinion on the other elements which would be required to establish a cause of action for common-law negligence in this case.

Accordingly, the judgment of the Court of Appeals granting the defendant's motion for summary judgment is reversed, and this cause is remanded to the trial court for proceedings consistent with this opinion. The costs of this appeal are taxed against the defendant.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.