**BITUMINOUS CASUALTY CORPORATION,
Appellant,**

v.

**Farron David McDOWELL,
et al., Respondents.**

**No. ED 80930.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court and Motion to Modify Denied May 5, 2003.

Application for Transfer Denied July 1, 2003.

Joseph L. Leritz, St. Louis, MO, for appellant.

Morry S. Cole, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Bituminous Casualty Corporation ("Insurer") appeals the summary judgment entered in favor of Ronald J. Wolk, Jr., ("Claimant") in Insurer's declaratory judgment action. The trial court declared that Insurer had a duty to defend and indemnify Farron McDowell ("Employee") for damages that may be assessed against him in an action brought by Claimant and his wife against Employee and Pense Brothers Drilling, Inc. ("Employer") as a result of an automobile collision between Employee and Claimant in which Employee was driving a vehicle belonging to Employer. We reverse and remand with directions to enter summary judgment in favor of Insurer.

On Sunday, December 8, 1996, Employee, while engaged in a personal errand, was involved in a head-on collision with a vehicle occupied by Claimant and his wife on a two-lane country road near Fredricktown, Missouri. Employee was driving a 1984 Chevrolet pickup truck owned by Employer. The truck was one of several vehicles for which Employer had obtained insurance from Insurer. The applicable policy included the following terms:

SECTION II—LIABILITY COVERAGE

A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damages" to which this insurance applies, caused by an "accident" and arising out of the ownership, maintenance or use of a covered "auto."

\*　　\*　　\*　　\*　　\*　　\*

1. WHO IS AN INSURED?

The following are "insureds":

a. you for any covered "auto";

b. anyone else using with your permission a covered "auto" you own, hire or borrow ...

Employer had a written policy that its vehicles were not to be driven for personal use by its employees. Employee was aware of that policy. He did not have express permission to drive the truck in question. Nevertheless, on the Friday or Saturday before the accident, he drove the truck to his home. The truck had an acetylene torch in the back he intended to use to remove some parts at a salvage yard. He could have put the torch in his own truck but decided to use Employer's truck instead.

On the morning of the accident, he and his young daughter drove to the salvage yard where Employee used the torch to obtain the parts he wanted. Then they left the salvage yard and proceeded towards Employee's mother's house a short distance away. While enroute, they were involved in a collision with a vehicle occupied by Claimant and his wife. Claimant and his wife later brought suit against Employee and Employer. Insurer then filed the instant suit against Employee, Claimant and his wife seeking a declaration that it had no duty to defend or indemnify Employee for any damages that

might be assessed against him in Claimant's suit because he was using Employer's truck without permission.

Following discovery, Claimant[1] moved for summary judgment, urging that the deposition testimony of Ronald Pense, one of the owners, Kimberly Pence, the office manager, and Employee established that Employee was using Employer's truck with its implied permission at the time of the accident. Claimant acknowledged that Employer had a policy in effect at the time of the accident that prohibited personal use of company vehicles, including using company vehicles to go to and from home and work when in state. Management employees, all of whom were related by blood or marriage, were permitted to use company vehicles to travel to and from their homes and the Pense brothers, who owned the business, were provided with company vehicles for both personal and business use. One supervisor, who lived much closer to the job site than the office, was permitted to use a company vehicle to travel between the job site and his home, rather than return it to the office each night. Employee testified that, on two or three occasions, he parked a company truck at his home when returning late from a job rather than drive the extra few blocks to the office to retrieve his own truck. He would then drive the company truck to the office early the following day. He did not know if Employer knew he had done this. When Employee was driving a company truck, his own truck would be parked at the office.

Ronald Pense acknowledged that Employer furnished company trucks to its employees for transportation to work and home. The trucks were kept in a locked, fenced yard to which Employee had a key. Ronald Pense could not recall ever authorizing personal use of a company vehicle at any time prior to the accident. Although he did not know of any personal use of company vehicles, "normal circumstances" led him to assume there probably was some, although he didn't know of it. Employer did not follow employees around to determine whether they were using company vehicles for personal use.

Employee did not ask anyone for permission to use the truck for his personal errand on the day of the accident. Employee testified that he believed that if he had called Ronald Pense and asked if he could use the company truck to go get some parts for his truck, Ronald Pense would have said yes. Employee was not prosecuted for taking the truck, nor was he disciplined or asked to pay for damage to the truck.

Claimant urges that the foregoing evidence leaves no genuine issue of material fact that Employee was driving the truck with Employer's implied permission at the time of the accident and was therefore an insured within the meaning of the policy.

Insurer responded to Claimant's motion and filed its own motion for summary judgment on the ground that the same depositions relied upon by Claimant left no genuine issue of material fact that Employee did not have either express or implied permission to use the truck for his personal errand at the time of the accident. Insurer cited Employee's testimony that he was not operating the truck in the course and scope of his employment at the time of the accident. Employer had a written policy that company vehicles were not to be used for personal use. Employee knew Employer's policy was that company vehicles were not to be used for personal use and he was furnished a copy

---

1. Employee had defaulted and Claimant's wife was voluntarily dismissed without prejudice, leaving Claimant and Insurer as the only remaining parties.

of the written policy. He did not have Employer's permission to use the truck at the time of the accident. Accordingly, Insurer urged that Employee was not an insured within the meaning of the policy.

Following argument, the trial court entered summary judgment in favor of Claimant. Insurer appeals, claiming the trial court erred in sustaining Claimant's motion and denying its motion because the evidence submitted in support of both motions establishes that Employee was not operating the truck with Employer's express or implied permission at the time of the accident. We agree.

When considering an appeal from a grant of summary judgment, "our review is essentially *de novo*." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. 1993). We will review the record in the light most favorable to the party against whom judgment was entered. *See id.* We take as true facts set forth by affidavit or otherwise in support of the moving party's motion unless contradicted by the non-moving party's response. *See id.* Summary judgment may be granted where the movant can establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See id.* at 377. Because the trial court's judgment is founded on the record submitted and the law, we "need not defer to the trial court's order granting summary judgment." *Id.* at 376.

When a motion for summary judgment is made and supported by a showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, shall set forth specific facts showing that there is a genuine issue for trial. *ITT*, 854 S.W.2d at 381. Thus, once a movant has met his burden, the non-movant's only recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.* A "genuine issue" is a dispute that is real, not argumentative, imaginary or frivolous. *Id.* at 382.

The single issue on appeal is whether Employee had implied permission of Employer and was covered as an "insured" under Employer's insurance policy for any liability arising out of the motor vehicle collision. Both sides agree that Employee did not have express permission to drive Employer's truck.[2]

Permissive use of a vehicle under an omnibus clause of an automobile insurance policy is a question of fact. *State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560, 567 (Mo.App.1998). Implied permission is determined from the facts and circumstances of the case and usually arises from a course of conduct over a period of time. *Shelter Mut. Ins. Co. v.*

2. Both parties treat the issue in this case as whether Employee had implied permission to use the truck for his personal errand. In *LeCave v. Hardy*, 73 S.W.3d 637, 645 (Mo. App.2002), a case not cited by either party, this court observed that implied permission can be found only where there is an absence of proof that the owner has either given *or* denied express permission. If the owner has expressly denied a third party permission to drive, implied permission should not be analyzed. *Id.* In *LeCave*, there was conflicting evidence as to whether the owner had expressly denied permission. *Id.* In the instant case, there is no such dispute. Since the parties briefed the issue presented as one of implied permission, we will address the issue as presented. However, nothing herein should be interpreted as rejecting what was said on the subject in *LeCave*.

*See,* 46 S.W.3d 65, 67 (Mo.App.2001). Implied permission may be the result of a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile. *Shelter Mut. Ins. Co. v. Baker,* 753 S.W.2d 646, 649 (Mo.App.1988).

In his motion and on appeal, Claimant urges that the evidence establishes the requisite course of conduct from which to infer Employee had Employer's implied permission to use its truck for his personal errand at the time of the accident. First, Claimant cites the management employees' use of company vehicles to travel to and from their homes as evidence that Employer's written policy prohibiting personal use of company vehicles was widely ignored. We disagree. Ms. Pense testified that it was company policy that management employees were *permitted* to use company vehicles for travel to and from their homes. The only other employee who regularly did so was a supervisor who lived much closer to the job site than the office. He was expressly authorized to take his vehicle home because it was in Employer's interest that he should do so. Claimant offered no evidence that management employees used company vehicles for personal errands. The fact that, as a matter of company policy, management employees were permitted to use company vehicles to commute to and from work does not establish a course of conduct from which to infer that Employee, who was not a management employee, had implied permission to use Employer's truck for personal errands.

■ Employee knew of Employer's policy that company vehicles were not to be used for personal use. He had never previously used a company vehicle to run personal errands and was not aware of any other employees using company vehicles to run personal errands, either with or without permission. Although he parked a company truck overnight at his home on two or three occasions when returning late from a job, there was no indication that Employer was aware he had done so. Nor is it clear that this would constitute personal use. He lived just a few blocks from the office and was returning from a job, not commuting to and from work.

Claimant next cites Ronald Pense's testimony that "normal circumstances" would lead him to assume that there was probably some personal use of company vehicles, although he was not aware of it. Mr. Pense's willingness to speculate that there may have been some personal use of company vehicles at some unspecific time is clearly not evidence of a course of conduct by Employer that would support an inference of implied permission. Mr. Pense testified that they did not follow employees around to check on compliance with the policy. Since he was under oath, he obviously could not say categorically that no personal use had ever occurred. There was no evidence that Employer knowingly tolerated personal use of its vehicles.

■ Claimant next cites Employee's testimony that he was sure that if he had called Ronald Pense on the day of the accident and asked for permission to use the truck for his personal errand he would have said yes, because "he's the kind of man that would have said yes." [3] According to Claimant this shows Employee reasonably believed he had permission. To

---

**3.** The speculative nature of Employee's assertion is underscored by the fact that what Employee really needed to borrow was the acetylene torch, not the truck. Employee acknowledged that he could have simply put the torch in his own truck, which would not technically have violated the written policy. Had he been asked, Mr. Pense could well have chosen to accommodate Employee by suggesting that alternative.

the contrary, we find it shows that Employee knew he did not have permission. Moreover, even if Mr. Pense had testified that he would have given permission if asked, which he did not, it would be irrelevant to a determination of whether implied permission was granted. *See Scheel,* 973 S.W.2d at 569. This is because whether implied permission exists is determined by what was actually said and done prior to the accident and is not created or destroyed by post-accident utterances and opinions. *Id.* (*quoting Hauser v. Hill,* 510 S.W.2d 765, 767 (Mo.App.1974)). Likewise, the fact Employee was neither prosecuted, disciplined or asked to pay for damage to the truck is evidence of post-accident conduct and must be disregarded.

The cases that Claimant cites to support a finding of implied permission are readily distinguishable. In *Bourne v. Manley,* 435 S.W.2d 420 (Mo.App.1968), a daughter drove her mother's car without express permission. *Id.* at 426–27. The court found that over a period of a couple years prior to the accident, the daughter had driven the car "regularly" and "on many different occasions" not only during the day, but also "of an evening." *Id.* Unlike *Bourne,* Employee did not use the truck "regularly" or "on many different occasions" for personal use.

Claimant also cites *Norris v. Nationwide Mutual Ins. Co.,* 55 S.W.3d 366, 372 (Mo.App.2001) in which the court found the evidence sufficient to support a finding of implied permission. In *Norris,* the employee was required to have a company van with him at home so he could go out on service calls at any time, day or night. 55 S.W.3d at 372. The company also authorized employee to use the van when he had it at home. *Id. Norris* is clearly distinguishable from the instant case because Employee was not required or authorized to take the truck home for service calls.

Finally, in *Ohio Casualty Ins. Co. v. Safeco Ins. Co.,* 768 S.W.2d 602, 604 (Mo. App.1989), there was evidence that a work crew had almost constant use of a vehicle for both business and personal reasons with the consent of the owner. This was held sufficient to establish implied permission to use the vehicle on a personal errand. *Id.* In the instant case, claimant failed to produce evidence of a single instance in which any employee used a company vehicle to perform a personal errand.

■ We find no evidence sufficient to raise a genuine issue of material fact as to whether Employee has implied permission to use Employer's truck for a personal errand. The trial court erred in entering summary judgment in favor of Claimant. Although the denial of a motion for summary judgment is ordinarily not reviewable, it may be reviewable on appeal where the merits of the motion are intertwined with the propriety of an appealable order granting summary judgment to another party. *Fischer v. City of Washington,* 55 S.W.3d 372, 381 (Mo.App.2001). This is such a case. Given the undisputed fact that Employer had specifically prohibited the use of company vehicles for personal errands and the absence of any genuine issue of material fact as to whether Employee had implied permission, we further hold that the trial court erred in denying Insurer's motion for summary judgment. Accordingly, we reverse the judgment and remand with directions to enter judgment in favor of Insurer.

MARY R. RUSSELL, P.J., and CLIFFORD H. AHRENS, J., Concur.