**AMERICAN STANDARD INSURANCE**
**COMPANY OF WISCONSIN,**
**Respondent,**

v.

**William A. STINSON, Defendant,**

**and**

**Shauna M. Young, Appellant.**

**No. ED 97657.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 23, 2012.

Application for Transfer to Supreme
Court Denied Dec. 13, 2012.

Application for Transfer Denied
Jan. 29, 2013.

Stephen M. Glassman, Clayton, MO, for appellant.

William A. Stinson, Pacific, MO, pro se.

Gary P. Paul, Clayton, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Shauna Young (Plaintiff) appeals the trial court's denial of her motion for summary judgment and grant of summary judgment to American Standard Insurance Company of Wisconsin (ASIC) on its petition seeking a declaratory judgment that it had no obligation to defend or indemnify its insured, William A. Stinson (Defendant), for claims arising out of a fatal motor vehicle collision. Plaintiff claims the trial court erred by: (1) denying her motion for summary judgment because ASIC's automobile insurance policy is ambiguous as a matter of law; (2) granting ASIC's motion for summary judgment because there remain unresolved issues of material fact; and (3) granting ASIC's motion for summary judgment because the trial court misapplied the "law of the case" doctrine and based its ruling on a prior order that did not address the same motions and legal issues that were present before the trial court at the time of the challenged ruling. We affirm.

### Factual and Procedural Background

In August 2004, Defendant worked at a car dealership owned by his father, William B. Stinson (Father). On the night of August 14, 2004, Defendant rode his bicycle to Father's dealership, forced open the dealership door and a safe containing dealer license plates, took a set of keys, and drove a 2001 Lincoln LS off the dealership parking lot. Shortly thereafter, Defendant crashed the Lincoln into a vehicle being driven by Ricky J. Young, who died as a result of the collision.[1] Plaintiff, Mr. Young's daughter, filed the underlying wrongful death suit against Defendant.

At the time of the August 14, 2004 collision, ASIC had issued an automobile insurance policy issued to Defendant. "Part I—Liability Coverage," provided, in relevant part:

We will pay compensatory damages an **Insured person** is legally liable for because of **bodily injury** and property damage due to the use of a car. . . .

ADDITIONAL DEFINITION USED IN THIS PART ONLY

**Insured person** or **insured persons** means:

1. **You** or a **relative.**

. . . .

But the following are not **Insured persons:**

1. Any person, other than a **relative,** using **your insured car** without **your** permission.

2. Any person, other than a **relative,** using **your insured car** with **your** permission, but who exceeds their scope of that permission.

3. Any person using a vehicle without the permission of the person having lawful possession.

. . . .

(emphasis in original).

On January 28, 2008, ASIC filed an action seeking a declaratory judgment that it

---

1. Defendant pleaded guilty to involuntary manslaughter, and the Circuit Court of St. Charles County sentenced Defendant to seven years' imprisonment.

had no obligation to defend or indemnify Defendant for claims arising out of the August 14, 2004 collision. ASIC based its argument on the policy language excluding from the definition of "Insured persons" "[a]ny person using a vehicle without the permission of the person having lawful possession." ASIC asserted that, because Defendant drove the Lincoln without permission of the vehicle's owner, which was either Father or Father's dealership, the policy did not cover the accident.

On January 7, 2010, Plaintiff filed a motion for summary judgment arguing that the exclusionary clause upon which ASIC based its claim for a declaration of non-coverage was ambiguous. The trial court denied Plaintiff's motion without explanation on April 1, 2010.

Plaintiff filed a first amended motion for summary judgment on November 12, 2010, again arguing that that the insurance policy was ambiguous, and, on February 19, 2011, the trial court issued an order and judgment denying Plaintiff's amended motion for summary judgment. The trial court rejected Plaintiff's argument that the policy language was ambiguous, explaining that "identical policy language was found to be clear and unambiguous in *State Farm Mutual [Automobile] Insurance Company v. Scheel* [, 973 S.W.2d 560 (Mo. App. W.D.1998) ]." The trial court later set aside the February 19, 2011 order and judgment on the grounds that Plaintiff's counsel did not receive timely notification of its issuance.

On June 28, 2011, ASIC filed a motion for summary judgment asserting that Defendant had no coverage under the policy and ASIC had no duty to defend or indemnify Defendant because Defendant was using the Lincoln without "permission of the person having lawful possession" of it.

Plaintiff filed a second amended motion for summary judgment on July 18, 2011, reasserting her earlier argument that the policy was ambiguous.

On October 5, 2011, the trial court granted ASIC's motion for summary judgment and denied Plaintiff's second amended motion for summary judgment. In the order, the trial court found that: (1) the policy language was "clear and unambiguous"; and (2) Defendant "did not have permission—express or implied—to drive the 2001 Lincoln automobile." Plaintiff appeals.

### Standard of Review

We review the entry of summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 376; Rule 74.04(c). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom summary judgment was entered. *ITT,* 854 S.W.2d at 376.

### Discussion

*1. Ambiguity*

In her first point on appeal, Plaintiff claims the trial court erred in denying her motion for summary judgment because the undefined phrase "any person" is ambiguous as a matter of law and must be interpreted against ASIC and in favor of coverage. ASIC counters that the trial court properly denied Plaintiff's motion for summary judgment and entered judgment in ASIC's favor because, under the clear and unambiguous language of the policy, Defendant was not an insured person.[2]

---

**2.** Additionally, ASIC argues that Plaintiff's first point must be denied because it chal-

■ The interpretation of the meaning of an insurance policy is a question of law. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). In construing the terms of an insurance policy, this court "applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured." *Id.* (internal quotations omitted). We read the policy as a whole to determine the parties' intent and give the policy language used its plain and ordinary meaning. *Grissom v. First Nat'l Ins. Agency*, 371 S.W.3d 869, 873 (Mo.App. S.D. 2012). "If the policy is unambiguous, the policy will be enforced according to its terms." *Id.* at 874 (quotation omitted).

■ "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (quotation omitted). "Language is ambiguous if it is reasonably open to different constructions." *Id.* (quotation omitted). "Ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210–11 (Mo. banc 1992). However, "the absence of a definition for a key term does not necessarily render the policy ambiguous." *Eldridge v. Columbia Mut. Ins. Co.*, 270 S.W.3d 423, 426 (Mo. App. W.D.2008).

■ Plaintiff maintains that the phrase "any person" is ambiguous as it is used in the provision excluding from the definition of "insured person" "[a]ny person using a vehicle without the permission of the person having lawful possession." More specifically, Plaintiff asserts that "any person" is ambiguous because it "may be reasonably understood to either include or exclude an 'insured person' defined in the policy." In support of her argument, Plaintiff contends that ASIC's policy is ambiguous as a matter of law because, in *Miller's Classified Ins. Co. v. French*, 295 S.W.3d 524 (Mo.App. E.D.2009), this court found that the phrase "any person," which appeared in an exclusionary provision of an insurance policy, was reasonably open to different constructions and therefore ambiguous.

In *French*, the insured father's fifteen-year-old, unlicensed daughter drove her father's vehicle into a tree, injuring her passenger. *French*, 295 S.W.3d at 526. The passenger filed an action seeking compensation for her injuries, and the father demanded that his insurance company, Miller's, provide a defense and indemnify his daughter. *Id.* Miller's, in turn, filed a declaratory judgment action seeking a declaration that, pursuant to the exclusionary language contained in the policy, it had no obligation to defend or indemnify the daughter. *Id.* The trial court granted summary judgment in favor of the father "based upon the definition of who is insured under the policy and an ambiguity in one of Miller's exclusionary clauses." *Id.*

lenges the denial of her motion for summary judgment. As ASIC correctly asserts, denial of a motion for summary judgment is interlocutory and therefore not a final, appealable order. *Cook's Fabrication & Welding, Inc. v. Mid–Continent Cas. Co.*, 364 S.W.3d 639, 646 (Mo.App. E.D.2012). However, where the merits of the denial are inextricably intertwined with the issues of an appealable order

granting summary judgment to opposing party, the denial of a motion for summary judgment may be reviewed on appeal. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456 n. 1 (Mo. banc 2006). We find the trial court's denial of Plaintiff's motion for summary judgment is sufficiently intertwined with its grant of summary judgment in favor of ASIC to merit appellate review.

On review, the court affirmed the trial court's judgment, holding that the term "any person" was ambiguous when analyzed in the context of the whole policy. *Id.* at 527. The liability coverage section of the policy defined "insured" as "[y]ou or any 'family member,'" and defined the words "you," "your," "we," "us," "our," and "family member," but it did not define "any person." *Id.* An exclusionary clause that appeared later in the policy denied coverage to "any person operating a vehicle without a reasonable belief that the person is entitled to do so." *Id.* The court reasoned that a lay person who purchased the policy could interpret the exclusionary provision's use of the term "any person" to be either "an all encompassing term" or to mean "'any person' other than those individuals specifically defined by the policy's definitions." *Id.*

■ *French* is distinguishable. The policy at issue in *French* defined "insured person" in one part of the policy to include father and daughter, but denied coverage for nonpermissive use in a separate, exclusionary provision. *Id.* "Where a policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Golden Rule Ins. Co. v. R.S.*, 368 S.W.3d 327, 334 (Mo.App. W.D.2012) (*quoting Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo.App. E.D.2007)).

■ In contrast, the liability coverage section of ASIC's policy precludes coverage for nonpermissive use within the definition of "insured person." The policy defines "Insured person" to include, among others, "you or a relative." Immediately after the definition, the policy provides that the "following are not Insured persons:.... 3. Any person using a vehicle without the permission of the person having lawful possession." When interpreting the terms of an insurance policy, this court "applies the meaning that would be understood by an ordinary person of average understanding purchasing the insurance." *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 705–06 (Mo. banc 2011). We conclude that the policy's definition of "Insured person," which specifically excludes "any person" using a vehicle without permission, is clear and unambiguous. Contrary to Plaintiff's argument on appeal, the use of "any person" in this context cannot reasonably be understood to mean any person *except* an "Insured person."

We agree with the trial court's conclusion that the policy in the instant case closely resembles the policy that the court held was unambiguous in *State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560 (Mo.App. W.D.1998). In *Scheel*, the defendant had an automobile insurance policy, issued by American Standard, that provided liability coverage for a non-owned vehicle provided it was being operated with the owner's consent or permission. 973 S.W.2d at 562. While the defendant's parents were out of town, the defendant drove their truck and collided with another vehicle. *Id.* After a trial, the trial court entered a judgment declaring that American Standard's policy provided coverage for the defendant's accident under its non-owned vehicle coverage provision based on its finding that, at the time of the accident, the defendant had his parents' implied permission to operate their truck. *Id.* at 562–63.

American Standard appealed on the grounds that the policy specifically excluded coverage for the defendant's operation of a non-owned vehicle and the defendant did not have his parents' implied permission to drive their truck. *Id.* at 563. In response, the defendant argued that the trial court properly declared that the policy covered his accident because the policy language was ambiguous. *Id.* at 565.

Specifically, the defendant claimed the policy was ambiguous because its liability coverage section defined "insured person" to include the defendant "when he ... was driving 'any car' other than the 'insured car,'" but, in the same section, excluded from the definition of an insured person, "as to any car other than the insured car, 'any person using a vehicle without the permission of the person having lawful possession.'" *Id.* In other words, the defendant argued that "because the further definition of an 'insured person' in the policy worked to restrict or exclude coverage provided by the initial definition of the same term, the policy was ambiguous." *Id.*

The court rejected the defendant's argument and held that the policy was unambiguous. The court explained: "Giving the policy language in question its plain meaning, we fail to see how a layman, such as [the defendant], could reasonably construe it in any fashion other than as providing liability coverage for non-owned vehicles as to *permissive* users only." *Id.* (emphasis in original). The court further concluded that there was no substantial evidence to support the trial court's finding that the defendant had his parents' implied permission to operate their truck at the time of the accident and reversed and remanded for the court to enter judgment for American Standard declaring no coverage. *Id.* at 570.

Like the policy in *Scheel,* the ASIC policy defined "insured person" to include Defendant and, in the same section, excluded from that definition "[a]ny person using a vehicle without the permission of the person having lawful possession." Giving this language its plain meaning, we similarly hold that the only reasonable construction of this policy provision is to deny coverage to any person who drives another's vehicle without that person's permission. As the *Scheel* court held, "[w]e do not find any duplicity, indistinctness, or uncertainty in the meaning of the policy language in question." [3] *Id.* at 565; *see also Hawkeye–Security Ins. Co. v. Bunch,* 643 F.3d 646, 652 (8th Cir.2011) (holding that policy that excluded from coverage "[a]nyone using a vehicle without a reasonable belief that the person is entitled to do so" was unambiguous).

In support of her argument that the policy is ambiguous, Plaintiff also asserts that ASIC clearly excluded specific insured persons from its medical payments coverage, and thus "was well aware of the appropriate method by which it could clearly distinguish between persons who are insured from those who are not." Plaintiff did not raise this argument before the trial court. "[I]ssues not presented to, or decided by, the trial court are not preserved for appellate review." *Katz v. Anheuser–Busch, Inc.,* 347 S.W.3d 533, 540 (Mo.App. E.D.2011). Furthermore, Plaintiff cites, and we find, no authority supporting her argument that the challenged policy language should be deemed ambiguous and construed against the insurance company because the insurance company communicated a similar exclusion more clearly elsewhere in the policy.

**3.** Plaintiff argues that *Scheel* is distinguishable from the instant case because, there, "no party *specifically claimed* that the subject policy was ambiguous precisely because the term 'any person' was used." (emphasis in original). Indeed, the defendant in *Scheel* claimed the non-permissive use exclusion was ambiguous without specifically challenging the use of the phrase "any person." *Scheel,* 973 S.W.2d at 565. Even though the *Scheel* court did not specifically find that the phrase "any person" was unambiguous, we are guided by its holding that the policy language, which was substantially similar to the language at issue here, was clear and unambiguous.

■ We likewise reject Plaintiff's argument that ASIC's later modifications to the liability coverage section of its policy constituted "recognition and acknowledgement of this court's holding in [*French*]" and demonstrates that the policy ASIC issued to Defendant was ambiguous. As the trial court properly found, "[t]he subsequent policy is not an issue in this case and therefore is not relevant.... What was clear and unambiguous did not become ambiguous due to change in the verbiage of a subsequent insurance policy." Point denied.

### 2. Permission of persons having lawful possession

■ In her second point on appeal, Plaintiff claims the trial court erred in granting ASIC's motion for summary judgment because there remain unresolved issues of material fact relating to: (1) "the person having lawful possession" of the Lincoln; and (2) whether Defendant had implied permission to use the vehicle. ASIC responds that the trial court properly granted it summary judgment because the record demonstrated that Defendant was using the Lincoln without permission of the person having lawful possession of it.

Plaintiff first contends that summary judgment was improper because "the evidence in this case is equivocal with respect to vehicle ownership." More specifically, Plaintiff asserts that the evidence demonstrates that either Father or Father's company, William Stinson & Sons Co. d/b/a/ W.C. Select Auto Center, owned the Lincoln and it is therefore "impossible to determine as a matter of law, who had the right to lawful possession of the Lincoln on the date of the fatal accident giving rise to this action."

As previously stated, summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). "A material fact in the context of summary judgment is one from which the right to judgment flows." *Id.* at 453. In other words, "[o]nly those factual disputes that might affect the outcome of the case under the applicable law are considered 'material' for purposes of summary judgment." *Tonkovich v. Crown Life Ins. Co.*, 165 S.W.3d 210, 214 (Mo.App. E.D.2005).

Here, ASIC's policy provided that a person using a vehicle without the permission of the person having lawful possession is not an insured person. The record clearly establishes the essential fact that Defendant did not own the car. However, even if we considered the issue of ownership to be disputed, whether Father or his company owned the Lincoln is not material to the outcome of this case and therefore does not preclude summary judgment.

■ Plaintiff also argues that a genuine issue of material fact exists regarding whether Defendant had Father's implied permission to drive the Lincoln at the time of the accident and was, accordingly, covered by the policy. "A 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Theerman v. Frontenac Bank*, 308 S.W.3d 756, 758 (Mo.App. E.D.2010) (*quoting ITT*, 854 S.W.2d at 382).

■ Implied permission to use an automobile for purposes of determining insurance coverage "is permission that is not verbally expressed, but provable by circumstantial evidence." *Nautilus Ins. Co. v. I–70 Used Cars, Inc.*, 154 S.W.3d 521, 529 (Mo.App. W.D.2005) (quotation omitted). "Implied permission is determined from the facts and circumstances of the

case and usually arises from a course of conduct of the parties over a period of time." *Id.* (quotation omitted). "Implied permission may be the result of a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile." *Bituminous Cas. Corp. v. McDowell,* 107 S.W.3d 327, 332 (Mo.App. E.D.2003).

The following facts were undisputed: Between January 2004 and June 2004, Defendant drove dealership cars on public roadways to refuel them and to help his Father transport vehicles from auctions to the dealership. In June 2004, Defendant used a dealership truck overnight without permission. On another occasion, sometime between 1999 and 2002, Defendant took and drove Father's company car without permission. After the June 2004 incident, Father forbade Defendant from driving dealership cars. Father also confiscated Defendant's keys to the dealership and informed Defendant that he could no longer be present at the dealership outside of business hours. Between June 2004 and the accident on August 14, 2004, Defendant moved cars on the dealership lot "maybe two times," but he did not drive any dealership cars on public roadways. In his deposition, Defendant testified that his parents had "absolutely not" given him permission to take the Lincoln on August 14, 2004 and, had he asked, they would have denied permission. Defendant further stated that, when he took the Lincoln from the dealership lot, he "figured [he would] probably be fired" and "locked up over the situation."

Plaintiff claims that the following facts demonstrate a genuine issue of material fact as to whether Defendant had implied permission to drive the Lincoln at the time of the accident: prior to August 14, 2004, Father had asked Defendant to drive dealership cars on dealership property and on public roadways; Defendant had previous-

ly taken company and dealership cars without Father's express permission and Father neither reported the incidents to police nor terminated Defendant's employment; and Father did not report the Lincoln missing until after learning of the fatal accident and consulting his attorney. Plaintiff also posits that, if Father's company owned the Lincoln, then Defendant's mother, as an officer of the corporation, gave Defendant implied permission to drive the vehicle, because: she knew Defendant's car was out of service; she was aware that he left the house the evening of August 14, 2004; and, when she spoke to Father the following day, she informed him that she suspected Defendant had removed a vehicle from the dealership lot.

In light of the undisputed facts that Father specifically prohibited Defendant's use of dealership vehicles, Defendant was aware of this restriction, and Father never permitted Defendant to drive dealership cars for personal use, we conclude that the facts cited by Plaintiff do not demonstrate a genuine issue of material fact as to whether Defendant had implied permission to drive the Lincoln. *See, e.g., McDowell,* 107 S.W.3d at 333 (holding that the trial court erred in granting summary judgment to the employee driver because the employer had specifically prohibited the use of company vehicles for personal errands). The record shows that Defendant and Father did not have a "common practice" or "course of conduct" that would have created implied permission for Defendant to drive the Lincoln on August 14, 2004. *See, e.g., Scheel,* 973 S.W.2d at 570. To the contrary, in June 2004, Father expressly forbade Defendant from driving dealership cars and confiscated Defendant's keys to the dealership. Although, prior to June 2004, Defendant occasionally drove dealership cars on public roadways for business-related purposes, Defendant did not drive any dealership cars on public roadways after Father revoked his permis-

sion to do so. Between June 2004 and August 14, 2004, Defendant only drove dealership cars to move them on the dealership lot with his employer's permission and for business-related reasons. There was no evidence that Father acquiesced to Defendant's use of dealership cars outside of dealership property or after business hours. Nor was there evidence that Father acquiesced to Defendant's operation of dealership cars for personal use.

Additionally, we note that the cases Plaintiff cites to support a finding of implied permission are readily distinguishable. In *LeCave v. Hardy*, 73 S.W.3d 637 (Mo.App. E.D.2002), the plaintiff sued the defendant father for negligent entrustment when the defendant's son drove and crashed the defendant's Camaro, killing a bicyclist. *LeCave*, 73 S.W.3d at 639. This court reversed the trial court's grant of summary judgment for the defendant because there was sufficient evidence for a reasonable jury to find that the defendant had given his son implied permission to drive the car. *Id.* at 646. Specifically, there was evidence that the son had previously driven the Camaro with the defendant's permission and the defendant left the keys in the Camaro's ignition on the night of the accident, despite his knowledge that the son's car was inoperable and the son "was likely to need a car to get to and from work and school." *Id.* In *Hallquist v. Smith*, 189 S.W.3d 173 (Mo.App. E.D.2006), the court followed *LeCave* and reversed the trial court's grant of summary judgment for the defendant parents in the plaintiff's negligent entrustment action where the evidence showed that "the parents had repeatedly allowed the child to drive the vehicle in the past and did nothing to prevent the child from gaining access to the vehicle on the night in question." *Hallquist*, 189 S.W.3d at 177.

Unlike the facts in *LeCave* and *Hallquist*, Defendant did not have a history of driving Father's dealership cars for personal use. Nor did Father make the Lincoln or its keys accessible to Defendant. Indeed, the undisputed facts show that Defendant, knowing he did not have permission either to drive dealership cars or be present on dealership property after business hours, used a screwdriver to force open a dealership door and a drill to break open the safe containing the dealership's license plates. Point denied.

### 3. Law of the case

█ In her third point on appeal, Plaintiff claims the trial court's order and judgment of October 5, 2011 erroneously granted ASIC's motion for summary judgment by: (1) misinterpreting the "law of the case" doctrine; and (2) basing its ruling on the reasoning and analyses of its prior order of February 19, 2011. ASIC counters that the trial court's October 5, 2011 order and judgment was proper in that it incorporated by reference the trial court's February 19, 2011 order, addressed Plaintiff's second amended motion for summary judgment, and analyzed the law with respect to the issue of implied permission.

Plaintiff submitted, and the trial court denied, two motions for summary judgment before it issued the October 5, 2011 order and judgment that Plaintiff challenges in this case. On April 1, 2010, the trial court denied Plaintiff's original motion for summary judgment without explanation and, on February 19, 2011, the trial court issued an order and judgment denying Plaintiff's amended motion for summary judgment.

In the February 19, 2011 order and judgment, the trial court rejected Plaintiff's argument that Defendant was covered by ASIC's policy because the phrase "any person" was ambiguous. First, the trial court noted that Plaintiff "made the same argument regarding policy interpre-

tation in the original motion for summary judgment," which the trial court denied on April 1, 2010, and Plaintiff "ha[d] brought nothing to the Court's attention that has changed since the time of the denial." The trial court held that "the April 1, 2010 order is the law of the case and to be followed in the instant matter." The trial court further found that the policy was unambiguous because "identical policy language was found to be clear and unambiguous in [Scheel]." The trial court adopted the reasoning of Scheel and rejected Plaintiff's argument that the policy was ambiguous under French. The trial court later set aside the February 19, 2011.

On June 28, 2011, ASIC filed its motion for summary judgment asserting that Defendant had no coverage under the policy because he was using the Lincoln without the owner's permission. On July 18, 2011, Plaintiff filed a second amended motion for summary judgment, again arguing that the policy language was ambiguous and must therefore be construed in favor of coverage. On October 5, 2011, the trial court issued its order and judgment granting ASIC's motion for summary judgment and denying Plaintiff's second amended motion for summary judgment. In denying Plaintiff's second amended motion for summary judgment, the trial court stated that it had previously rejected Plaintiff's ambiguity argument in its judgments of April 1, 2010 and February 19, 2011. The trial court noted that, although it set aside the February 19, 2011 judgment, the trial court found the reasoning and legal analyses therein "to be valid and persuasive." Accordingly, the trial court concluded "that the April 1, 2010 order and judgment is the law of the case and to be followed in the instant matter" and "incorporate[d] the reasoning and legal analyses of the February 19, 2011 order and judgment."

After analyzing and rejecting Plaintiff's claim that the policy language was ambiguous, the trial court addressed ASIC's argument that Defendant did not have permission to drive the Lincoln at the time of the accident and Plaintiff's argument that Defendant "may have had implied permission to drive the [Lincoln] or at least there [was] a fact question as to whether [Defendant] had permission." The trial court considered the evidence and determined that Defendant did not have implied permission to drive the Lincoln because "[t]here was no common practice or course of conduct whereby [Father] and/or his dealership acquiesced in the practice of [Defendant] operating automobiles for personal use and after business hours."

Plaintiff claims the trial court misinterpreted the law of the case doctrine "to require it to rule in accordance with its own previous order of April 1, 2010...." Specifically, Plaintiff asserts the trial court misapplied the law of the case doctrine because: (1) the law of the case doctrine only applies to cases that have been adjudicated by appellate courts; (2) the law of the case doctrine only governs successive adjudications that involve the same issues and facts; and (3) the trial court's April 1, 2010 order failed to disclose any legal basis or reason for its ruling.

■■■ Plaintiff correctly asserts that the law of the case doctrine does not apply to successive actions taken by a trial court. Rather, "[t]he doctrine of the law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." *Williams v. Kimes*, 25 S.W.3d 150, 153 (Mo. banc 2000) (quotation omitted). However, the trial court's misuse of the term "law of the case" does not render invalid the October 5, 2011 judgment and order. It is clear that, in referring to the "law of the case," the trial court was communicating its intent to follow and incorporate by reference its earlier rulings because the trial court

considered those rulings "valid and persuasive." Plaintiff cites no authority in support of her argument that a trial court cannot incorporate by reference an earlier order.

Additionally, Plaintiff asserts that the trial court erroneously based the reasoning of its October 5, 2011 judgment and order on its earlier order of February 19, 2011, which: (1) only denied Plaintiff's motion for summary judgment; (2) did not address ASIC's motion for summary judgment, which was not filed until June 28, 2011; and (3) failed to analyze the law with respect to the issue of Defendant's implied permission to drive the Lincoln. These alleged errors do not require reversal of the trial court's October 5, 2011 order and judgment. The October 5, 2011 order did not merely incorporate and adopt the analyses of the February 19, 2011 order. Instead, it adopted the reasoning contained in the earlier order to the extent that it analyzed and rejected Plaintiff's claim that the policy language was ambiguous, and additionally considered ASIC's motion for summary judgment and both parties' arguments relating to implied permission. Indeed, contrary to Plaintiff's claim that the trial court "failed to analyze the law with respect to the issue of . . . implied permission," the trial court devoted several pages to analyzing and applying the law of implied permission before concluding that Defendant did not have implied permission to drive the Lincoln on the night of the accident. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.