IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2010 Session

**EFFIE RIVERS**

**v.**

**NORTHWEST TENNESSEE HUMAN RESOURCE AGENCY**

Appeal from the Circuit Court for Carroll County
No. 08CV25      Donald E. Parish, Judge

No. W2009-01454-COA-R3-CV - Filed April 19, 2010

This is a personal injury case. The defendant's employee negligently backed the defendant's vehicle into the vehicle in which the plaintiff was a passenger. Prior to the accident, the plaintiff had reported discomfort in her shoulders to her physician. At some point after the accident, the plaintiff reported to her physician that she had pain in her right shoulder. Ultimately, the plaintiff required shoulder replacement surgery. The plaintiff sued the defendant for negligence. The parties stipulated to the defendant's liability, and a bench trial was held on causation and damages. Based in part on deposition testimony of physicians, the trial court found that the accident caused the plaintiff's injury and the ensuing surgery and entered judgment for the plaintiff. The defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Robert O. Binkley, Jr. and James V. Thompson, Jackson, Tennessee, for the Defendant/Appellant, Northwest Tennessee Human Resource Agency

Ricky L. Boren, Jackson, Tennessee, for the Plaintiff/Appellee, Effie Rivers

## OPINION

### FACTS AND PROCEDURAL HISTORY

In April 2007, Plaintiff/Appellee Effie Rivers ("Ms. Rivers") was a seventy-five year old widow, retired after working for many years in a local arsenal, in the fields, and cooking and cleaning for local residents. She and her husband raised twelve children. Ms. Rivers had some arthritis in her shoulders and elsewhere, a longstanding history of chest pain and headaches, and had had knee replacement surgery, but she took care of herself, and did canning, baking, and sewing.

On April 24, 2007, Ms. Rivers had been driven to an appointment at the office of her longtime primary care physician, James Williamson, M.D. ("Dr. Williamson"), to receive allergy shots. She was in the passenger seat of a Ford Taurus automobile. When Ms. Rivers' driver pulled into Dr. Williamson's parking lot, they encountered traffic congestion near the entrance to the building. Rather than parking and walking to the building, they pulled in behind a van and waited for the traffic at the entrance to clear. The van was owned by Defendant/Appellant Northwest Tennessee Human Resource Agency ("Northwest") and was operated by Defendant Michael Ridgely ("Ridgely").

While Ms. Rivers' vehicle was waiting at a standstill, Ridgely backed the Northwest van into the front of the Ford Taurus in which Ms. Rivers sat. Ms. Rivers saw the impending collision and braced for the impact by placing her right hand on the dashboard. When the van struck the car, Ms. Rivers moved forward against her seatbelt and then rocked back into her seat. The collision cracked a headlight lens on the Ford Taurus and dented the van's rear bumper.

Within a few minutes after the accident, Ms. Rivers went into Dr. Williamson's office and was examined by him. Fresh from the collision, she complained of pain in her upper chest and back and somewhat all over. Dr. Williamson examined Ms. Rivers and noted her report of pain. At that time, he apparently did not treat her pain or refer her to a specialist.

During May 2007, the month after the accident, Ms. Rivers saw Dr. Williamson twice. In the first appointment, Ms. Rivers again reported pain in her upper chest, legs, hip, and back. After an examination, Dr. Williamson noted tenderness in her upper chest on the right side, above and around the right breast. The second appointment with Dr. Williamson apparently concerned unrelated medical issues pertaining to a stomach illness, as well as pain in her back, hip, and leg.

On June 20, 2007, Ms. Rivers had another appointment with Dr. Williamson. At that visit, Ms. Rivers complained to Dr. Williamson that she had pain in her right shoulder. Dr.

Williamson arranged for an MRI of Ms. Rivers' right shoulder. After Dr. Williamson reviewed the MRI, Ms. Rivers was referred to orthopaedic surgeon Robert E. Stein, M.D. ("Dr. Stein") for treatment. Dr. Stein had performed Ms. Rivers' knee replacement surgery in September 2005.

When Ms. Rivers saw Dr. Stein in August 2007, Dr. Stein reviewed the MRI Dr. Williamson had ordered. The MRI showed a complete absence of the rotator cuff on the right shoulder. Dr. Stein then ordered an x-ray, which revealed severe arthritis in the right shoulder with bone-on-bone contact. After physical therapy proved unsuccessful, Dr. Stein recommended surgery on Ms. Rivers' right shoulder. Subsequently, in October 2007, Dr. Stein performed a reverse total shoulder replacement[1] on Ms. Rivers. After that, she underwent extensive physical therapy to aid her recovery. Despite the surgery and physical therapy, Ms. Rivers was left with limited range of motion in her right shoulder, as well as some residual pain.

On April 22, 2008, Ms. Rivers filed the instant lawsuit against Northwest and Ridgely, seeking $300,000 in damages. In the complaint, Ms. Rivers alleged that she sustained severe personal injuries as a result of the automobile accident caused by Ridgely's negligence. Northwest and Ridgely answered the complaint and admitted that, while in the course and scope of his employment, Ridgely had backed the Northwest van into the vehicle occupied by Ms. Rivers. However, they denied that Ms. Rivers had sustained severe injuries due to the accident.

Discovery ensued, and eventually Ms. Rivers' claims against Ridgely were dismissed.[2] In anticipation of trial, Northwest retained James C. Varner, M.D. ("Dr. Varner"), an orthopaedic surgeon, as an expert witness. The parties deposed, among others, Dr. Williamson, Dr. Stein, and Dr. Varner. Prior to trial, the parties stipulated to Northwest's liability, leaving only issues of causation and damages to be decided.

---

[1]In his deposition testimony, Dr. Stein described the procedure as follows:

[Y]ou normally think of the shoulder as a ball fitting into a cup and the normal total shoulder basically recreates the ball and recreates the cup. The reverse shoulder replacement stands everything on its head and puts the ball where the cup is and the cup where the ball is.

[2]After the consent order dismissing the claim against Ridgely was entered, Northwest filed an amended answer containing the same admission of liability and denial of causation. The parties do not raise the filing of either the order or the amended answer as an issue on appeal.

On April 22, 2009, the trial court conducted a bench trial. Five witnesses testified, including Ms. Rivers. Six exhibits were entered into evidence, including transcripts of the depositions of Drs. Williamson, Stein, and Varner.

Ms. Rivers testified as to her background. She initially denied that she had had pain in her shoulder prior to the accident, and then subsequently allowed that she had had "a little arthritis pain." When the accident occurred, Ms. Rivers said, she braced her right hand on the dashboard in front of her, and the impact caused her to go forward and then rock back in her seat. After Dr. Williamson referred her to a specialist for physical therapy, she said, her shoulder pain worsened. Ms. Rivers said that she "hurted, cried with pains." After the surgery and additional physical therapy, she said, she was left unable to cook, sew, or even reach up far enough to brush her own hair.

In his deposition, Dr. Williamson testified that Ms. Rivers had been his patient for over thirty years, and that he had treated her for a variety of ailments. He noted that Ms. Rivers suffered from arthritis in many parts of her body, but mostly in her hips and knees. After a review of Ms. Rivers' medical records, he recalled that she had complained of pain in her right shoulder as far back as October 2004; he had attributed the pain to her general arthritis. Dr. Williamson's records noted that Ms. Rivers reported problems with her right shoulder in April 2006, July 2006, September 2006, and March 2007, one month prior to the accident.

On the day that Dr. Williamson saw Ms. Rivers immediately after the accident, she mentioned only upper back and chest pain, he said. He acknowledged that Ms. Rivers made no complaint of pain in her right shoulder until June 20, 2007, some two months after the accident. When asked whether there was a causal relationship between the automobile accident and the complications Ms. Rivers had experienced with her right shoulder, Dr. Williamson answered affirmatively and stated: "Yeah. I feel it [Ms. Rivers' shoulder complications] was due to the accident because, like I said, she hadn't had any really significant problems with [the shoulder] prior to that." Dr. Williamson conceded that, within the two-month period after the accident, Ms. Rivers did not complain of pain or discomfort specifically in her shoulder. However, he felt that the tenderness in her chest area noted in her office visit in May 2007 was "connected" to the subsequently diagnosed shoulder problems and her shoulder surgery. Dr. Williamson acknowledged that he had no specialized training in orthopaedics and no experience with shoulder problems such as Ms. Rivers' condition.

In his deposition, Dr. Stein testified that Ms. Rivers came to see him on August 20, 2007, for pain in her right shoulder. He took a history from her, in which she told him that her right shoulder "had given her trouble for about four months." Ms. Rivers connected the onset of

her shoulder difficulty with the automobile accident, telling Dr. Stein that "the seatbelt apparently jerked her shoulder and she had pain thereafter."

After examining Ms. Rivers and taking an x-ray of her shoulder, Dr. Stein diagnosed Ms. Rivers with severe arthritis in the shoulder, noting the complete absence of a rotator cuff in the joint. Ultimately, he performed the reverse total shoulder replacement surgery on Ms. Rivers' right shoulder.

In his testimony, Dr. Stein stated that Ms. Rivers had a longstanding arthritic condition that pre-dated the April 2007 automobile accident. He nevertheless felt that the motor vehicle accident necessitated the surgery: "It would appear that Mrs. Rivers basically had an underlying severe arthritic condition that was at least stable, and by history, as a result of the accident, what was stable was suddenly symptomatic." Dr. Stein acknowledged that, if the accident were the cause of Ms. Rivers' shoulder problems, "then I would say that you would expect that [shoulder pain] to begin shortly after the accident, within a few days." He testified that his opinion on causation, *i.e.*, that the accident was the cause of the condition that necessitated Ms. Rivers' surgery, was based on the history that she gave him; specifically, her statement that the seatbelt jerked her shoulder in the accident and she had had pain ever since.

Northwest proffered the testimony of Dr. Varner on whether there was a causal relationship between the automobile accident and Ms. Rivers' shoulder surgery. Dr. Varner's testimony was based on a review of Ms. Rivers' medical records and the depositions of Dr. Williamson and Dr. Stein. Dr. Varner did not speak with Ms. Rivers or examine her.

Dr. Varner concurred with Dr. Stein's opinion that Ms. Rivers' underlying shoulder condition pre-dated the automobile accident. Like Dr. Stein, Dr. Varner also said that if the accident were the cause of Ms. Rivers' shoulder complications, then the shoulder pain should have manifested within one or two days after the accident. Dr. Varner believed that the accident did not necessitate Ms. Rivers' surgery, stating: "[I]t is my opinion that the pathology that necessitated this surgical procedure predated the accident as described, and therefore I did not see a causational relationship between the described accident of 4-21-07 and the necessity for surgical intervention." Dr. Varner said that, at some point in the past, Ms. Rivers had had a tear of the rotator cuff that resulted in a chronic arthritic condition. In reviewing Dr. Williamson's records after the accident, he saw no complaints of pain localized to the right shoulder and the rotator cuff area until July 20, 2007. It was Dr. Varner's opinion that the fact that Ms. Rivers did not describe specific shoulder symptoms until months after the accident "would argue against specifically the accident as a causative agent" with regard to the surgery. Based on Ms. Rivers' pre-existing chronic condition and absence of a rotator cuff in her right shoulder, coupled with the lack of any complaint by Ms. Rivers specifically

related to the right shoulder until months after the accident, Dr. Varner concluded that the surgery was not necessitated by the accident.

After considering the evidence presented, including the deposition testimony of the three physicians, the trial court found that the motor vehicle accident resulted in a "severe aggravation" of Ms. Rivers' preexisting condition and awarded damages of $202,593.88 by oral ruling. On May 4, 2009, the trial court entered a written order consistent with the prior oral ruling. Northwest now appeals.

### ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Northwest argues that the trial court erred in finding that the April 24, 2007 accident caused Ms. Rivers' shoulder condition, surgery and damages. Thus, the sole issue on appeal is that of causation.

Since this case was tried by the trial court sitting without a jury, we review the trial court's findings of fact *de novo* affording a presumption of correctness unless the evidence preponderates to the contrary. TENN. R. APP. P. 13(d); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). "[C]ausation in a negligence case is a question of fact." *Haines v. Henry County Bd. of Educ.*, No. W.2008-02532-COA-R3-CV, at *7 (Tenn. Ct. App. Feb. 11, 2010), *no perm. app.* (quoting *Jones v. Shelby Cty. Civ. of Corr.*, No. W2007-00198-COA-R3-CV, 2008 WL 366151, at *5 (Tenn. Ct. App. Feb. 12, 2008), *no perm. app.*).

We note the level of deference accorded to the trial court's determinations regarding the credibility of the witnesses:

> When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). However, "[w]hen the issues involve expert medical testimony that is contained in the record by deposition, determination of the weight and credibility of the evidence necessarily must be drawn from the contents of the depositions, and the reviewing court may draw its own conclusions with regard to those issues." *Foreman v. Automatic Sys., Inc.*, 272 S.W.3d 560, 571 (Tenn. 2008) (citing *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 216 (Tenn. 2006)).

*Haines*, 2010 WL 457502, at *7. Thus, we accord great deference to the trial court's assessment of the testimony of witnesses who testified in open court. As to the deposition testimony of the experts in this case, the appellate court may draw its own conclusions on the witnesses' credibility.

**ANALYSIS**

Northwest argues that the trial court erred in finding a causal relationship between the automobile accident and the problems Ms. Rivers experienced with her right shoulder. Urging this Court to make its own determination about the credibility and weight of the deposition testimony of the three physicians, Northwest contends that the evidence preponderates against a finding of causation. Northwest argues that Dr. Varner's opinion is the most accurate and reliable because Dr. Varner had the most complete factual foundation upon which to render his opinion, in that Dr. Varner was aware of both Ms. Rivers' preexisting arthritic condition and the mechanics of the automobile accident. Northwest points out that Dr. Williamson lacks training in orthopaedics and is potentially biased because he has a longstanding relationship with Ms. Rivers. Moreover, Northwest emphasizes that Dr. Stein's opinion is based on the medical history Ms. Rivers recited to him and asserts that Ms. Rivers presented an inaccurate medical history to Dr. Stein in that she did not tell him that she had complained of shoulder pain prior to the accident.

In response, Ms. Rivers notes that the trial court credited her live testimony, and asserts that the issue of causation depends on this credibility determination as well as the expert testimony of Drs. Williamson and Stein, who both examined Ms. Rivers. Ms. Rivers argues that Dr. Williamson in particular was in the best position to render an opinion as to causation, because he was familiar with Ms. Rivers' condition both before and after the accident.

Causation is a distinct element of negligence, and "[n]o claim for negligence can succeed in the absence of" it. *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Id.* (citing *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 543 (Tenn. Ct. App.1981); *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280 (Tenn. Ct. App.1977)). Generally, expert medical testimony is necessary to establish causation of a medical condition. *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001) (citing *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991)).

In her testimony, Ms. Rivers describes eloquently the debilitating pain in her shoulder, both before and after the surgery, and her belief that the accident was the cause of this condition. She indicated that any discomfort in her shoulder prior to the accident was minimal.

-7-

Nowhere in her testimony, however, does she state *when* the painful shoulder symptoms first arose, and specifically, how soon after the April 24, 2007 collision. Both orthopaedic specialists, Dr. Stein and Dr. Varner, testified that if the accident caused the condition that required surgery, they would expect Ms. Rivers to experience pain specifically in her right shoulder within a few days after the accident. Therefore, while we accord great deference to the trial court's determination that Ms. Rivers' testimony was credible, she simply did not testify as to a fact crucial to determining causation, namely, how soon her symptoms occurred.

Dr. Williamson's records present a contemporaneous account of Ms. Rivers' shoulder pain and indicate clearly that Ms. Rivers had a painful shoulder condition long before the April 24, 2007 accident. Notably absent from his records are any notation that Ms. Rivers complained of pain in her right shoulder at any point during her several visits to his office during the two-month period following the accident. Rather, the records indicate that Ms. Rivers complained only of chest pain and tenderness during this period.

In opining that the accident caused Ms. Rivers' shoulder complications, Dr. Williamson seems to link Ms. Rivers' complaint of chest pain and tenderness after the accident to her subsequent shoulder surgery. However, he offers no explanation as to how the chest pain would be related to Ms. Rivers' rotator cuff, and acknowledges his lack of expertise in shoulder issues such as the problems Ms. Rivers had. Moreover, Dr. Williamson's assertion that the chest pain was connected to the shoulder injury is not borne out by the testimony of either Dr. Stein or Dr. Varner.

In formulating his opinion, Dr. Varner relies heavily on the nature of Ms. Rivers' undisputed preexisting condition and the lack of any notation of shoulder pain in Dr. Williamson's medical records for the two-month period following the accident. Dr. Varner neither treated nor spoke with Ms. Rivers in forming his opinion. Applying his expertise in shoulder problems such as Ms. Rivers' condition to the medical records before him, Dr. Varner testified unequivocally that the accident was not causally related to her subsequent shoulder surgery. Thus, Dr. Varner found the absence of a report of shoulder pain in the two-month period after the accident to be determinative.

In formulating his opinion, Dr. Stein relied upon the history he took from Ms. Rivers on her first visit to him after the accident. In testifying about her history, he states that on August 20, 2007, Ms. Rivers told him that her shoulder pain began about "four months" earlier, that the seatbelt she was wearing at the time of the accident jerked her right shoulder upon impact, and that her shoulder symptoms began shortly after that. Thus, Dr. Stein's opinion, that the accident necessitated the shoulder surgery he performed on Ms. Rivers, was based squarely on the accuracy of the history that she gave to him.

As noted above, had Ms. Rivers testified in her live testimony that her shoulder pain began shortly after the accident, it would be clear that we would be required to accord "great deference" to the trial court's accreditation of her testimony in this regard. Here, however, the assertion that Ms. Rivers' shoulder pain began shortly after the accident appears in the record essentially two steps removed from Ms. Rivers' live testimony, that is, it appears in the form of Dr. Stein's deposition testimony recounting Ms. Rivers' statements to him. Moreover, the accuracy of Ms. Rivers' statements to Dr. Stein must be evaluated in light of the absence of any notation of shoulder pain in Dr. Williamson's records until some two months after the accident.

In support of Ms. Rivers' assertion that the trial court's finding on causation should be affirmed, she cites *Taylor v. Dyer*, 88 S.W.3d 924 (Tenn. Ct. App. 2002). *Taylor* was a personal injury case in which the plaintiff sought damages for injury to the rotator cuff in her right shoulder after being rear-ended by the defendant's vehicle. *Id.* at 925. Ultimately, the plaintiff had shoulder surgery. The plaintiff had been involved in two accidents in which her shoulder was injured, and an issue at trial was whether the accident involving the defendant necessitated the plaintiff's surgery. After a bench trial, the trial court entered a judgment in favor of the plaintiff, and the defendant appealed. *Id.* The primary issue on appeal was proof of causation. *Id.* at 926.

On appeal, the defendant in *Taylor* argued that causation was not proven because the plaintiff's surgeon testified that he could not state with medical certainty that the accident with the defendant caused the rotator cuff tear that resulted in the plaintiff's surgery. *Id.* at 926. The appellate court noted, however, that "[c]ausation may be established by a combination of medical and lay testimony." *Id.* The trial court had found as a fact that the injuries sustained by the plaintiff in the accident with the defendant were the more severe. *Id.* Relying on this factual finding by the trial court, along with expert testimony that was somewhat equivocal, the appellate court affirmed the trial court's finding on causation. *Id.*

In the instant case, Northwest argues that Dr. Stein's testimony should be discounted because Ms. Rivers did not inform him of her history of longstanding arthritis in her right shoulder. However, the tests conducted by Dr. Stein showed him that Ms. Rivers had suffered from chronic arthritis in her shoulder, so her failure to disclose this fact does not undermine Dr. Stein's opinion. Northwest argues persuasively that the fact that Dr. Williamson's records contain no notation that Ms. Rivers complained of pain in her right shoulder until two months after the accident casts doubt on the accuracy of the history Ms. Rivers gave to Dr. Stein. However, the trial court determined overall that Ms. Rivers was a truthful witness, and this determination informs our analysis.

In light of all of these factors, we must evaluate Dr. Varner's opinion and Dr. Stein's opinion. Dr. Varner, in his testimony, noted the absence of any timely complaints of shoulder pain in Dr. Williamson's records, but did not expressly consider the history Dr. Stein took, in which Ms. Rivers recounted that her shoulder pain began shortly after the accident. Dr. Stein testified clearly that, assuming the truth of the history given to him by Ms. Rivers, the surgery was causally related to the accident. While the question is a close one, considering heavily the trial court's evaluation of Ms. Rivers as a truthful witness, we agree with the trial court's decision to credit Dr. Stein's testimony that the accident with the Northwest van necessitated Ms. Rivers' surgery.

Considering the record as a whole, we find that the evidence preponderates in favor of the trial court's finding that the April 24, 2007 accident was causally related to Ms. Rivers' ensuing shoulder surgery and associated expenses.

## CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellant Northwest Tennessee Human Resources Agency, and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE