IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2017 Session

**HOLLY RADER, ET AL. v. RUBY TUESDAY, INC.**

**Appeal from the Circuit Court for Knox County**
**No. 2-302-12     Kristi Davis, Judge**

**No. E2016-01677-COA-R3-CV**

Holly Rader ("Plaintiff") appeals the August 4, 2016 order of the Circuit Court for Knox County ("the Trial Court") granting summary judgment to Ruby Tuesday, Inc. ("Ruby Tuesday") in this slip and fall action after finding that Ruby Tuesday did not have superior, actual, or constructive knowledge of the condition that caused Plaintiff's slip and fall. We find and hold that Ruby Tuesday did have superior, actual, or constructive knowledge of the condition that caused the slip and fall and owed a duty to Plaintiff. We, therefore, vacate the grant of summary judgment and remand this case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

Ameesh A. Kherani and David H. Dunaway, LaFollette, Tennessee, for the appellant, Holly Rader.

Janet Strevel Hayes and Benjamin W. Jones, Knoxville, Tennessee, for the appellee, Ruby Tuesday, Inc.

# OPINION

## Background

Plaintiff sued Ruby Tuesday alleging that she sustained damages as a result of her slip and fall ("the Accident") that occurred on June 24, 2011, at the Ruby Tuesday located on Emory Road in Powell, Tennessee. Plaintiff's employer, Glaxo Smith Kline, and its workers' compensation insurance carrier, Broadspire, were granted leave to intervene in the suit because the injuries allegedly sustained from the Accident occurred while Plaintiff was acting in the course and scope of her employment.

The facts surrounding the Accident are largely undisputed. Plaintiff was working as a pharmeceutical sales representative for Glaxo Smith Kline. The evening before the Accident, Plaintiff placed an order with Ruby Tuesday for a carry-out lunch for approximately 25 to 30 people to be picked up on June 24, 2011, the date of the Accident. Plaintiff intended to serve the carry-out lunch to a group of doctors and their staff members upon whom Plaintiff was making a sales call. The carry-out order included drinks and at least one bag of ice.

Plaintiff planned to pick up the lunch order around 11 or 11:15 a.m. as she wanted to be at the doctors' office before noon on that day. Plaintiff testified that her practice when placing orders such as this one was to tell Ruby Tuesday that she wanted the food "earlier" because "they kind of run late on their food." On the day of the Accident, Plaintiff called Ruby Tuesday when she "got off the exit" to let them know she was on her way. She stated that the traffic was "stop and go because the traffic light was not working . . . ." Plaintiff stated: "I was worried that I might be late, so I didn't want to get there have a delay, so I told them, you know, hey, be sure and have my food ready when I walk in." Plaintiff asserted that she was not running behind schedule and had not missed her pick-up window.

When Plaintiff arrived at the Ruby Tuesday, she entered through the "carry-out entrance," told the manager that she was there to pick her order up, and handed the manager her credit card.[1] Plaintiff stated that the manager took the credit card and told her that her food was "over on the ledge." The food was in a box. The food order also included a "couple of gallons of tea," and "two, maybe more, bags of ice."

Plaintiff stated that she picked up the box and a bag of ice to "head for" her car, and she fell. When asked what caused her to fall, Plaintiff stated: "The water from the

---

[1] The manager testified that he did not process Plaintiff's payment and that the bartender would have been the person to whom Plaintiff handed her credit card. Although this fact is disputed, it is not material to the issues involved in the suit.

2

bag of ice." Plaintiff stated that "there wasn't any water in the floor" when she entered the Ruby Tuesday. She further stated that "the bag [of ice], when I felt, it was all water." Plaintiff stated: "I was soaked. . . . What I know is I was laying in the floor with water. There was some ice and I had a big box of food laying on me." Plaintiff stated that she was "hurting and in shock and just wanted to get out of there."

After her fall, Plaintiff put the food, drinks, and ice into her car with the help of some Ruby Tuesday employees. Plaintiff then went to the doctors' office for her sales call. At the doctors' office, Plaintiff took some Advil. Plaintiff did not change clothing prior to making her sales call. Instead, she "turned on the heater real, real high" in her car.

James Gordon, III, the manager at the Ruby Tuesday on the day of the Accident, was deposed. Mr. Gordon testified that condensation from the bag of ice that Plaintiff picked up dripped on to the floor and this water was what caused Plaintiff to slip and fall. Mr. Gordon testified that he had assisted with setting out Plaintiff's carry-out order so it was ready for pickup and stated that the order "was ready at the time due." Mr. Gordon himself placed the ice out with the food. He stated: "the food - - it was  - - it was placed out at the time it was due, and it sat out for quite a while." Mr. Gordon further stated:

> [Plaintiff] was there for three minutes. She was frantic. She grabbed the box. I offered to help. She declined my help, grabbed the bag of ice, turned around, the condensation fell in the floor. She slipped and fell. She got up quickly, did not want my help. That's what I recall. That's what I recall.

Mr. Gordon also testified that later that day Plaintiff telephoned and told him that her knee was swelling and that she was going to seek medical attention.

On the day of the Accident, after making her sales call, Plaintiff sought medical attention. Plaintiff stated that the doctor ordered x-rays which showed nothing was broken. The doctor prescribed an antiinflammatory and told Plaintiff to apply ice and to rest. Plaintiff continued to have pain, and in June of 2012 she filed the instant suit.

Ruby Tuesday filed a motion for summary judgment alleging, in part: "The undisputed material facts, however, demonstrate that no hazard existed sufficient to trigger a duty of [Ruby Tuesday] to warn Plaintiff of a hazard prior to Plaintiff's own actions creating the hazard," that there was no evidence of a dangerous or defective condition, and that Plaintiff was more than fifty percent at fault for her injuries. In support of its motion, Ruby Tuesday submitted the deposition testimony of Plaintiff wherein Plaintiff testified that the condition that caused her to fall was the water that

dripped from the bag of ice when she picked the bag up and that there was no water on the floor prior to Plaintiff's picking up the bag of ice.

In opposition to Ruby Tuesday's motion for summary judgment Plaintiff pointed to the deposition testimony of Thad Harshbarger, among other things. Mr. Harshbarger testified that he is an operating partner for Ruby Tuesday and heads up ten different restaurants in east Tennessee and Kentucky. Mr. Harshbarger testified that Ruby Tuesday normally keeps the temperature in its restaurants at "[s]eventy to '72" degrees. Mr. Harshbarger agreed that a bag of ice left at room temperature would melt, produce water, and form condensation that could drip. Mr. Harshbarger explained that the normal procedure for carry-out orders is to bag the ice when the order is supposed to be picked up and place it with the order "so they can grab it, because it does take some time to bag the ice."

Plaintiff also submitted the affidavit of Kimberly Kay Goins. In her affidavit, Ms. Goins stated that she has been in the food catering and food service business for thirty-seven years and has prepared "catering and carry-out orders for hundreds and thousands of patrons and guests." Ms. Goins also has owned her own catering and food service business. Ms. Goins stated in her affidavit:

> 7. In my review of these materials it is clear Ruby Tuesday, Inc., was negligent through its agents, servants and employees in keeping a bag of ice outside at room temperature of 72° for a significant period of time because this would cause the ice bag to accumulate condensation and cause the ice to melt which is a safety risk for any potential carry-out guests who carry the ice causing the condensation to get on the floor causing a significant hazard of the patron or any other person slipping and falling.
> 8. In my thirty-seven (37) year career in catering and food industry, it is the industry norm that bags of ice for any carry-out order are stored in an ice freezer until the patron or the guest arrives to pick up the order and then the bag of ice is taken out of the freezer to hand to the guest and patron to ensure that there is no safety risk and to also otherwise ensure that the patron and guest is not getting ice that has already melted into water.

After a hearing, the Trial Court granted Ruby Tuesday summary judgment finding and holding, *inter alia*, that there were no genuine disputed issues of material fact and that Ruby Tuesday did not have superior, actual, or constructive knowledge of the condition that caused Plaintiff to slip and fall, and therefore, that Ruby Tuesday had negated an essential element of Plaintiff's claim. Plaintiff appeals to this Court.

4

**Discussion**

Although not stated exactly as such, Plaintiff raises one issue on appeal: whether the Trial Court erred in granting summary judgment to Ruby Tuesday. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\* \* \*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set

5

forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

With regard to negligence, our Supreme Court has explained:

As we have frequently observed, a negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See, e.g., Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). The duty element is a question of law requiring the court to determine "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Id*. at 870 (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 37 at 236 (5th ed.1984)). Appellate review of a question of law is de novo. *Bradshaw*, 854 S.W.2d at 870.

In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm. *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 902 (Tenn. 1996). A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct

outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593–94 (Tenn. 1994). Although the traditional rationale for imposing this duty was the owner's superior knowledge of conditions on the premises, *see e.g., Kendall Oil v. Payne*, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (Tenn. App. 1955), we recently held that a duty may exist even where the injury-causing condition is alleged to be "open and obvious" to the plaintiff. We explained:

> That a danger to the plaintiff was 'open or obvious' does not, *ipso facto,* relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn. 1998).

The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Prosser and Keeton on Torts*, supra, § 61 at 426. In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.* at 426–27. As we explained in *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992):

Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. '[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, *and that some action within the [defendant's] power more probably than not would have prevented the injury*.'

(emphasis added) (citations omitted).

*Rice v. Sabir*, 979 S.W.2d 305, 308-09 (Tenn. 1998) (footnote omitted).

In its memorandum opinion incorporated into its August 4, 2016 judgment by reference, the Trial Court found that the "injury-causing condition" was the "actual water on the floor of the restaurant," not the bag of ice that had been sitting on a shelf melting which allowed water to condense on the bag. The Trial Court found that the undisputed facts showed that the water was not on the floor when Plaintiff entered the Ruby Tuesday to pick-up her food order. The undisputed facts show that the water did not drip on to the floor of the restaurant until Plaintiff picked up the bag of ice. As such, the Trial Court found that Ruby Tuesday could not have had knowledge of the injury-causing condition prior to the Accident because the injury-causing condition, water on the floor, did not occur until Plaintiff picked up the bag of ice. The undisputed facts show that Plaintiff fell immediately after she picked up the bag of ice. Thus, according to the Trial Court, Ruby Tuesday could not have had actual or constructive knowledge of the injury-causing condition prior to Plaintiff's slip and fall. The Trial Court further found that Ruby Tuesday did not have a duty to warn Plaintiff that the bag of ice might drip when it was lifted up because the condition of the bag of ice was "equally available to be noticed by both Ruby Tuesday's [sic] and the plaintiff," and as such Plaintiff had as much knowledge about the condition of the bag of ice when she lifted it as did Ruby Tuesday. Based upon all this, the Trial Court found that Ruby Tuesday had negated an essential element of Plaintiff's claim, i.e., duty.

Ruby Tuesday made a properly supported motion for summary judgment. Plaintiff opposed the motion and pointed to evidence that showed that Ruby Tuesday knew that the ice had been sitting out at room temperature. In fact, Mr. Gordon, the Ruby Tuesday manager, testified that he had assisted with setting the order out to wait for Plaintiff to pick it up and that the order, including the bag or bags of ice, had been sitting out "for quite a while." Plaintiff also pointed to the testimony of Mr. Harshbarger, an

8

operating partner for Ruby Tuesday, who agreed that a bag of ice left at room temperature would melt, produce water, and form condensation on the bag that could drip. Plaintiff also pointed to the affidavit of her catering and food service expert, Ms. Goins, who stated that the industry norm is to keep bags of ice for a carry-out order in a freezer until the customer arrives for the pickup, both to ensure that the bag does not form condensation and drip and that the customer receives ice as ordered and not water.

We agree with the Plaintiff that the Trial Court defined the dangerous or injury causing condition too narrowly. The dangerous or injury-causing condition was not just the water that fell on the floor after Plaintiff picked up the bag of ice. The dangerous or injury-causing condition included the partially melted bag of ice with condensation on it waiting to be picked up by Plaintiff. It was this condition of the bag of ice that caused the water to fall on the floor when Plaintiff picked up the bag of ice. The undisputed facts show that only Ruby Tuesday and not Plaintiff had actual knowledge of how long the bag of ice had been sitting out on the shelf. In the case now before us, Plaintiff has shown that Ruby Tuesday clearly had superior knowledge with regard to how long the bag of ice had been sitting out at room temperature before Plaintiff arrived to pick up her order. We must balance the foreseeability and gravity of the potential risk of harm to a customer such as Plaintiff if a bag of ice is left at room temperature "for quite a while" and then drips water on to the floor when picked up by the customer against the burden imposed upon Ruby Tuesday to protect against such foreseeable harm. Ruby Tuesday could have protected against such harm either by leaving the bag of ice in a freezer until the customer arrived or by warning the customer that the bag of ice might be dripping because it has been sitting out "for quite a while." The foreseeable probability and gravity of harm outweighs the burden on Ruby Tuesday to have taken steps that would have prevented the harm. This results in Ruby Tuesday having had a duty to engage in alternative conduct to prevent the foreseeable harm. Thus, we hold that Ruby Tuesday did have a duty to Plaintiff.

In its brief on appeal, Ruby Tuesday argues, in part, that summary judgment was also proper because reasonable minds could conclude only that Plaintiff's fault was fifty percent or greater. In *Staples v. CBL & Assocs., Inc.*, our Supreme Court instructed:

> In negligence cases, only after the element of duty is established does the comparative fault of the plaintiff come into play. *See Coln v. City of Savannah*, 966 S.W.2d [34] at 42 [ (Tenn. 1998) ]. If the defendant has plead the affirmative defense of the plaintiff's relative fault, the reasonableness of the plaintiff's conduct in confronting a risk should be determined under the principles of comparative fault. *See Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994). If the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not

9

differ that her fault was equal to or great [sic] than that of the defendants, summary judgment in the defendant's favor may be granted. *See Coln v. City of Savannah*, 966 S.W.2d at 44.

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 91–92 (Tenn. 2000).

Ruby Tuesday argues that Plaintiff admitted that there was no water on the floor prior to Plaintiff's picking up the bag of ice, that Plaintiff was the one who ordered the ice and demanded that it be ready at a certain time knowing that this time was earlier than she intended to arrive for pickup, that Plaintiff was running late, and that Plaintiff should have known that ice melts and will cause condensation on the bag. Thus, Ruby Tuesday argues that Plaintiff was in the best position to avoid the Accident. Viewing the evidence, including our determination of what the dangerous or injury causing condition was and Ruby Tuesday's actual and superior knowledge as to how long the ice had been sitting out, in the light most favorable to plaintiff, as we must at this summary judgment stage, we cannot say that a reasonable trier of fact could not find that the percentage of fault attributable to Plaintiff was less than fifty percent.

The evidence in the record on appeal shows that Ruby Tuesday knew how long the bag of ice was sitting out while Plaintiff had no actual knowledge of how long the bag of ice had been sitting out at room temperature. The evidence further shows that Plaintiff ordered a bag or bags of ice, not water. A reasonable trier of fact could find that Plaintiff was justified in expecting that the bag she picked up was un-melted ice and that Plaintiff was less than fifty percent at fault for picking up the bag without examining it to determine if the ice had melted causing condensation on the bag. As such, there are genuine disputed issues of material fact with regard to comparative fault in this case, making summary judgment inappropriate.

In its brief on appeal, Ruby Tuesday also argues that public policy ought to prohibit a finding of liability in this case. In essence, Ruby Tuesday argues: "To deny summary judgment in this case would be to suggest that there is a legal duty to warn that ice melts and can develop condensation when placed in a plastic bag. To adopt the Plaintiff's reasoning would create law that mandates that a restaurant must disregard the specific requests a customer makes regarding pick-up and/or affirmatively warn all customers that ice can melt."

The outcome that Ruby Tuesday argues will occur, however, will not result from our decision in this case. We are not holding that a restaurant must disregard customer requests, nor are we holding that a restaurant must warn all customers that ice melts. Rather, we state only that Ruby Tuesday was in a superior position to know that the bag of ice involved in the Accident had been sitting out at room temperature "for quite a

while," and knowing that ice melts and can cause condensation on the bag at room temperature, Ruby Tuesday had a duty either to keep the bag of ice in a freezer until Plaintiff arrived or to warn Plaintiff that the bag of ice had been sitting out "for quite a while" and, therefore, could drip water causing a potentially dangerous condition. Such a duty imposes neither an onerous nor a ridiculous burden upon Ruby Tuesday.

As Ruby Tuesday had a duty to Plaintiff and we cannot say that a rational trier of fact could not find that the percentage of fault attributable to Plaintiff was less than fifty percent, summary judgment was not proper. We, therefore, vacate the grant of summary judgment and remand this case for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellee, Ruby Tuesday, Inc.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

11